IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MICHAEL ANTHONY DELLATORE, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:11-CV-108-Y |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Michael Anthony Dellatore, TDCJ-ID #1463726, is a state prisoner in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Huntsville, Texas.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

## C. FACTUAL AND PROCEDURAL HISTORY

On October 3, 2007, a jury found petitioner guilty of possession of four grams or more but less than 200 grams of methamphetamine with intent to deliver in Tarrant County, Texas, and the trial court sentenced him to thirty years' confinement. (State Habeas R. at 78) Petitioner appealed, but the Second District Court of Appeals of Texas affirmed the trial court's judgment. (*Id.* at 80-94) Petitioner did not file a petition for discretionary review in the Texas Court of Criminal Appeals. (Pet. at 3) On March 13, 2009, petitioner filed a state habeas application challenging the 2007 conviction, which was denied without written order by the Texas Court of Criminal Appeals on the findings of the trial court. (State Habeas R. at cover, 2) This federal petition for writ of habeas corpus followed.

The Second Court of Appeals summarized the factual background of the case as follows:

> Officer Bret Morgan with the Euless Police Department testified that he first encountered Dellatore in 2003 when Dellatore was a passenger in a truck that was leaving a residence at 1003 Collin Drive, where Officer Morgan was investigating complaints that drugs were being dealt. Officer Morgan investigated the residence again in 2004 when another drug complaint was made and then met with the occupants of the residence–Marie Burris and Dellatore–in March 2006, when they made a harassment report and verified their address as 1003 Collin Drive.
>
> As part of his ongoing investigation, Officer Morgan conducted a trash investigation of the trash from 1003 Collin Drive on December 1, 2006. Within the trash, Officer Morgan found multiple "deal bags" with a powdery residue and a lot of small "roaches" or small, smoked marijuana cigarettes. He also found mail addressed to Marie Burris and Michael Dellatore. Based on the items found in the trash and Officer Morgan's ongoing investigation of 1003 Collin Drive, he prepared and submitted a search warrant affidavit. Officer Morgan testified at trial that he did not have personal knowledge that Dellatore was living at 1003 Collin Drive. However, he connected the dots–Dellatore had said he was living there in March when he filed the harassment report, and then the mail from the trash run on December 1, 2006, indicated that Dellatore was still living there. Based on the search warrant affidavit, a judge issued a search warrant for 1003 Collin Drive. Officer Morgan thereafter contacted Detective Murphree with the narcotics task force.

Officer Todd Murphree, who was assigned to the narcotics task force of the Euless Police Department testified that on December 1, 2006, he executed the search warrant at 1003 Collin Drive and that six to eight officers accompanied him. As they approached the house, Burris came out of the house. Officer Murphree entered the house and made sure that there were no others in the house before bringing Burris back in and detaining her in the front living area.

Office Murphree searched the bathroom and a bedroom that had been turned into an office. In the room that functioned as an office, Officer Murphree found a digital scale sitting on top of the desk, along with a small notebook with a rose on the front that contained names written in it with numerical values beside them. Inside the left-hand drawer of the desk, he located one baggie, containing a white crystal substance that he recognized to be methamphetamine. In that same drawer, he found a larger Zip-lock baggie that had hundreds of empty baggies in it. Office Murphree also found a traffic citation dated October 9 issued to Dellatore and bearing the address of 1003 Collin Drive. Officers also located documents with Burris's name on them in the office. The documents found closest to the drugs belonged to Burris. On a wall shelving unit, he found other baggies, containing what appeared to be methamphetamine. He also found a black wallet, in which there were three more baggies that contained methamphetamine.

Officer Murphree did not recall seeing any items in the bathroom that obviously belonged to a man, but he said he was not searching for such items. A picture of the bathroom was admitted into evidence showing that the toilet seat was in the upright position; no explanation was provided for the seat's position, i.e., use, cleaning, or otherwise.

In the other bedroom, where more methamphetamine was located, officers noticed a pair of men's boots and a baseball cap. One of the photographs that was admitted into evidence depicted a tray located inside one of the bedrooms. The tray contained some marijuana residue and a digital scale, which Officer Murphree testified is used to weigh narcotics. During the search, officers found $394 in the black wallet in the office, $220 in the desk drawer in the office, and $642 in Burris's purse.

While officers were searching the residence, Dellatore arrived, and the officers detained him. Dellatore told Officer Murphree that Dellatore had some framed football jerseys on the wall in the house that belonged to him and that he and Burris had slept in one of the bedrooms the previous night. Officer Murphree also recalled that Burris had said that she and Dellatore were common-law husband and wife.

> Officer Murphree testified that "user amount" is an amount, usually a gram, that someone would ingest for his personal use, whereas "dealer amount" refers to "intent for redistribution or sale, something more than just for personal use." He further testified that based on his experience and training, the quarter ounce of methamphetamine found in this case, along with the presence of hundreds of baggies, digital scales, and the ledger notebook, indicate a dealer quantity rather than a personal use quantity. Pursuant to office policy, Officer Murphree did not take any fingerprints on any of the evidence.
>
> Sharon Patton, a drug chemist with the Fort Worth Police Department Crime Lab, testified that she tested three baggies containing a powdery substance. The baggie labeled J-1 measured 0.12 grams, the baggie labeled J-2 measured 1.3 grams, and the baggie labeled J-3 measured 0.01 grams; each of these baggies contained methamphetamine. Additionally, State's Exhibit 6, Item E measured 5.58 grams containing methamphetamine.

(*Id.* at 81-85) (footnotes omitted)

### D. ISSUES

Petitioner raises four grounds for habeas relief in his petition, in which he contends his trial counsel rendered ineffective assistance by failing to (1) challenge the legal sufficiency of the evidence to show he resided at the residence and was "connected" to the drugs seized, (2) conduct an independent investigation of his case, (3) investigate or research the police report, and (4) investigate "any elements of [his] case." (Pet. at 7-8) In his memorandum in support, petitioner also raises multiple claims, wherein he contends counsel rendered ineffective assistance by failing to (5) file a motion to suppress, (6) request discovery, (7) request a jury instruction on mere presence, (8) interview witnesses, (9) make objections, (10) bring up the fact that Burris was on probation on other drug charges and was an informant for the state, and (11) retain a handwriting expert, and by (12) erroneously advising him to reject a 2-year plea offer by the state and (13) representing him notwithstanding a conflict of interest. Finally, he contends (14) the cumulative effect of counsel's

individual acts or omissions was "substantial enough" to render counsel's representation ineffective and prejudicial. (Pet'r Mem. at 2-10)

### E. RULE 5 STATEMENT

Respondent believes one or more of petitioner's ineffective-assistance claims are unexhausted as required by 28 U.S.C. § 2254(b). Respondent does not contend the petition is barred by the statute of limitations or successive. (Resp't Ans. at 7-8)

Under the federal exhaustion requirement, a habeas petitioner must have fairly presented the substance of his federal claim to the highest court of the state, in this instance the Texas Court of Criminal Appeals. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). In order for a claim to be exhausted, the state court system must have been presented with the same facts and legal theory upon which the petitioner bases his current assertions. *Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th Cir. 2006). In other words, exhaustion requires a state prisoner to have presented the state courts with the same claim he urges upon the federal courts. *Id.*

Having reviewed petitioner's state habeas application, it is clear petitioner's ineffective-assistance claims under grounds (1), (5)-(10), and (13)-(14), enumerated above, are unexhausted. (State Habeas R. at 15-17, 21-25) Under the Texas abuse-of-the-writ doctrine, however, petitioner cannot now return to state court for purposes of exhausting the claims. TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4 (Vernon Supp. 2010). The abuse-of-the-writ doctrine represents an adequate state procedural bar to federal habeas review. *See Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997). Therefore, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, petitioner's ineffective-assistance claims under grounds (1), (5)-(10),

and (13)-(14) are procedurally barred from this court's review. *See Smith v. Johnson*, 216 F.3d 521, 523-24 (5th Cir. 2000). According, the discussion below applies only to petitioner's grounds (2)-(4), which are combined to raise a claim that counsel failed to investigate, and grounds (11)-(12).

### F. DISCUSSION

#### *1. Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When the

Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### 2. *Ineffective Assistance of Counsel*

Petitioner claims his trial counsel was ineffective by failing to conduct a pretrial investigation and retain a handwriting expert and by erroneously advising him to reject a 2-year plea bargain offer by the state. (Pet. Insert; Pet'r Mem. at 6-26)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An ineffective assistance claim is governed by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced the defense. *Id.* at 688. A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective assistance claims have been reviewed on the merits under the *Strickland* standard and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of *Strickland*, or if the state courts' decision is based on an unreasonable determination of the facts in light of the evidence before the court. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002).

Contrary to petitioner's allegation, the state habeas judge, who also presided over petitioner's trial, conducted a hearing by affidavit. (State Habeas R. at 44-46) After considering counsel's affidavit, the habeas judge adopted the state's proposed findings of fact refuting petitioner's allegations, concluded petitioner had failed to prove ineffective assistance on counsel's part or prejudice under *Strickland*, and recommended denial of petitioner's application. (*Id.* at 51-60, 76) The application was then forwarded to the Texas Court of Criminal Appeals, which denied the application without written order on the findings of the trial court. (*Id.* at cover) As previously noted, this constitutes an adjudication on the merits by the highest state court and is entitled to the presumption of correctness. Under these circumstances, a federal court may assume that the state court applied the *Strickland* standard to petitioner's claims, unless there is evidence that an incorrect standard was applied. *Townsend v. Sain*, 372 U.S. 293, 314 (1963)[1]; *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003); *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir. 2002). Thus, assuming the Texas Court of Criminal Appeals applied *Strickland* to the factual findings, we defer to the state court's adjudication of the claims unless it appears the decision was contrary to or involved an unreasonable application of *Strickland* or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the state court proceedings.

Having independently reviewed petitioner' ineffective-assistance claims and the record of the state courts' proceedings, this court cannot say that the state court's decision was contrary to or involved an unreasonable application of *Strickland* or that it was based on an unreasonable determination of the facts as presented in the state courts. Weighing the credibility of the affiants

---

[1] The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

was the role of the state habeas court, and, clearly, the state court found the affidavit of counsel to be more credible. *Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) (providing that a trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are "virtually unreviewable" by the federal courts). Petitioner presents no compelling argument or evidence to rebut the state court's factual findings or legal conclusions, and there is nothing in the record to suggest that counsel's representation was deficient or that, but for counsel's alleged acts or omissions, the jury would have acquitted petitioner or imposed a lesser sentence.

Counsel responded to petitioner's allegations, in pertinent part, as follows:

> Michael Dellatore claims that he received ineffective assistance of counsel because I failed to investigate his case, failed to get a handwriting analysis and failed to disclose the evidence the State had. Additionally, I advised him to reject a two year plea offer.
>
> As it is well know[n] by the Court[,] Tarrant County has an open file policy as it concerns all police reports and evidence concerning criminal cases. I was furnished with that information and this was passed on to Mr. Dellatore. The key witness to this case was Maria Burris. I spoke with Ms. Burris on several occasions. She indicated to me that she was involved in the sale of drugs at the Collins location (she plead [sic] guilty to those charges) and that Michael Dellatore was also involved in the sale of drugs at the location. She also indicated to me that Michael Dellatore did live at that location and had so over the past four years. In her plea bargain she was not even required to testify against Michael Dellatore to get her plea bargain and was not called by either side as a witness.
>
> The defense did not call a handwriting expert because the State failed to prove that the notebook was in anyway linked to Mr. Dellatore based on the lack of fingerprint evidence or other extrinsic evidence that was disclosed to me by the State in their written reports. Nor was any questioning of Mr. Dellatore's ownership of the notebook ever challenged. Therefore a handwriting expert was not needed.
>
> As far as his plea bargain is concerned he was advised of all plea bargain offers and the risks of taking the case to trial. He rejected all of these offers claiming that he was in fact innocent of these charges. His last offer was five years in prison

> given to him on August 3, 2007 he rejected that offer. At no time was he made a two year prison plea bargain offer.
>
> As it was explained to him, a person cannot plead not guilty to a charge and take any kind of plea bargain offer. Since he claimed his innocence no offer could be accepted by him. I acknowledged his claim of innocence in a letter dated August 22, 2007. (Exhibit A). Additionally, he sent me a letter dated March 19, 2007, April 30, 2007 and July 19, 2007 along with other letters telling me that he had nothing to do with the case, (innocent) but he would accept a probation offer. An offer of probation was never presented by the State. He also wrote a letter to me dated April 9, 2007 admitting that he knew that Maria was selling drugs out of their house.

(State Habeas R. at 44-46)

Trial counsel has a duty to conduct a reasonable amount of pretrial investigation into the facts of a criminal case or to make a reasonable decision that makes particular investigations unnecessary. *Strickland*, 466 U.S. at 691. The record reflects that under its "open file" policy, the state turned over its entire file to defense counsel, including the police report, abdicating any duty counsel had to file pretrial discovery motions, and counsel interviewed both petitioner and Burris. (Pet'r Mem. in Support, Exh. B-C) *See Strickler v. Green*, 527 U.S. 263, 283 n.23 (1999) ("[I]f a prosecutor asserts that he complies with *Brady* through an open file policy, defense counsel may reasonably rely on that file to contain all materials the State is constitutionally obligated to disclose under *Brady*."); *Smith v. Maggio*, 696 F.2d 365, 367 (5th Cir. 1983) ("Counsel had no duty to file pretrial motions, because the prosecutor established an open file policy that made the filing of discovery motions or *Brady* requests pointless."). Petitioner fails to demonstrate what a more thorough investigation would have revealed or how it would have benefitted his defense.

Further, the dispositive factor regarding counsel's decision whether to hire an expert must be evaluated on the basis of reasonableness. *Bower v. Quarterman*, 497 F.3d 459, 470 (5th Cir. 2007). Counsel's decision not to hire a handwriting expert was not unreasonable in this instance.

*Id.* at 470-473; *Cantu v. Collins*, 967 F.2d 1006, 1016 (5th C ir. 1992). Counsel explained that the state failed to link the notebook to petitioner through fingerprint or other extrinsic evidence, and counsel was able to emphasis this fact during cross-examination of Detective Murphree. (RR, vol. 3, at 76-77) Even if petitioner could show the handwriting in the notebook was not his, the evidence would have likely had little effect, if any, on the jury's verdict, given the other evidence linking petitioner to the residence and the illegal activity.

Finally, petitioner provides no proof that a 2-year plea bargain offer was ever extended by the state. Bald assertions by a petitioner are not enough to sustain a claim of ineffective assistance of counsel. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001); *Green v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996).

Petitioner has failed to present convincing evidence or compelling argument to rebut the presumption of correctness of the state courts' adjudication of his ineffective assistance claims. Thus, applying the presumption of correctness, the state courts' denial of habeas relief is not contrary to, or involve an unreasonable application, of *Strickland*.

### 3. Evidentiary Hearing

Petitioner's claims were adjudicated on the merits in state court, and he has failed to overcome the limitation of § 2254(d)(1), on the record that was before the state court, to warrant a hearing in this court. *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1398-1401 (2011).

## II. RECOMMENDATION

Petitioner has not demonstrated that he is entitled to federal habeas relief; thus, it is recommended that the petition be denied.

### III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until January 4, 2012. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

### IV. ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until January 4, 2012, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December __15__, 2011.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE